CHAPEL HENDRICK v. THE CAROLINA CENTRAL RAILROAD COMPANY.

*Eminent Domain—Damages—Assessment—Carolina Central Railroad Company—Statute Limitations—Condemnation of Lands.*

1. The Carolina Central Railroad Company, by virtue of the statutes under which it was organized, and the titles acquired under the judicial sales of the Wilmington and Charlotte Railroad Company, the Wilmington, Charlotte and Rutherfordton Railroad Company, and the Carolina Central Railway Company, became the owner of all the rights, powers, privileges, &c., of those corporations, and likewise became liable for all damages and assessments on account of the appropriation of lands of individuals for the right of way.

2. Although the right of way was located by one of the preceding companies in 1856 on a tract of land, and work was done on adjacent lands, but the road was not *finished* more than two years before action began by the land-owner for damages, such owner was not barred of his remedy for compensation, notwithstanding he may have acquired his title since the location.

3. The land-owner will be entitled to have included in his assessment damages for injuries to lands adjoining those upon which the railroad is constructed.

This is a SUMMARY PROCEEDING for the assessment of damages, heard by *MacRae, J.*, upon case agreed, at August Term, 1887, of CLEVELAND Superior Court.

This is a summary application of the plaintiff, claiming damages from the defendant railroad company, occasioned by the location and construction of the railroad of the latter over and across the lands of the former as allowed by the statutes (Acts 1854-'55, ch. 225, §§ 26, 27, 28; Acts 1872-'73, ch. 75, §§ 9, 10, 11, 15; Acts 1881, ch. 5, § 1; *The Code*, §§ 697, 698, 1943, 1946), in which plaintiff prays that the Court appoint commissioners to assess damages to him, &c. The defendant filed its answer to the petition, denying the plaintiff's alleged rights, &c.

In term time the parties agreed upon and submitted the facts of the matter of the proceeding to the Court for its judgment thereupon, and the following is a statement of the facts agreed upon:

"1. That plaintiff is the owner of the land described in the complaint, and traces his title through intermediate conveyances from John and William Forbis' heirs, who owned it in 1856, and back to the State of North Carolina. Plaintiff acquired his title in the year 1878.

2. That in the year 1856 the Wilmington, Charlotte and Rutherford Railroad Company, a corporation created and organized under the laws of North Carolina, as hereinafter stated, in locating its line of railroad from Wilmington to Rutherfordton, crossed the land described in the complaint, and staked out the line of its railroad at the places for which plaintiff now claims his damages in this action; that said railroad company about the year 1859 or 1860 caused work to be done at various points upon its said route between Shelby and Rutherfordton, excavations and embankments for building and operating its railroad along said route, and some upon the Wm. Forbis land in 1856 (the heirs of Wm. Forbis were non-residents and minors), but upon the lands

in complaint no work was done, except the staking by the surveyors, and some excavations were also made upon said route about one thousand feet east of where said line of route struck the eastern line of plaintiff's tract; that upon said route of line there was also work done west of plaintiff's land upon a stone quarry, located upon the said right of way; that other work was done at various other points upon said right of way, between Shelby and Rutherfordton; that except upon the Wm. Forbis land, as above stated, no work was done upon the right of way over the land of the plaintiff described in the complaint, except that where the same was originally taken, located and surveyed in 1856, the said road-bed was staked out by the surveyors; and ever since then and up to the fall of 1885, a part of said right of way so staked out over plaintiff's land remained in its original timber growth, and the remaining portion has been continuously cultivated by plaintiff and those under whom he claims.

3. That except as hereinbefore stated no work was done by said W., C. & R. R. R. Co., or any of its successors, upon said right of way on plaintiff's land described in the complaint, until the fall of 1885, when the defendant finished its railroad thereon.

4. That before the commencement of this action the plaintiff made regular demand of the defendant for damages claimed by him, and they were unable to agree upon the same.

5. That neither the plaintiff nor any one under whom he claims title has ever granted or contracted in any way the said right of way to defendant, nor to any corporation under which it claims.

6. That the Wilmington and Charlotte Railroad Company was a corporation, created by an act of the General Assembly of North Carolina, ratified the 13th February, 1855, entitled 'An act to incorporate the Wilmington and Charlotte

Railroad Company;' that this corporation was succeeded by the Wilmington, Charlotte and Rutherford Railroad Company, being the same corporation which took and located the said right of way as hereinfore stated, which was created and organized by an act of the General Assembly of North Carolina, ratified the 14th day of February, 1885, and entitled 'An act supplemental to an act passed at the present session of the General Assembly, entitled an act to incorporate the Wilmington and Charlotte Railroad Company;' that under a judgment and decree for foreclosure of a mortgage obtained at January Term, 1873, of the Superior Court of New Hanover County, N. C., the corporate franchises, road-bed and all other property of said W., C. & R. R. R. Co. was sold at public sale, when one Timothy H. Porter became the purchaser, and on the 25th April, 1873, the commissioners, duly appointed by said Court, Edwin E. Burnes and others, executed a deed to said Porter, conveying the franchises, road-bed and all the property of said W., C. & R. R. R. Co., which deed was duly proven and registered in said county of New Hanover on 3d May, 1873; that by virtue of the act of the General Assembly of North Carolina, ratified the 20th February, 1873, entitled 'An act to incorporate the Carolina Central Railway Company,' the Carolina Central Railway Company was created and duly organized and became vested with the powers and rights therein stated, as to the purchase of the said W., C. & R R. R. Co., its franchises, road-bed and other property; that on the 17th day of May, 1873, said Timothy H. Porter and wife sold and conveyed by deed the franchises, road-bed and all other property of said W., C. & R. R. R. Co. purchased by him at said foreclosure sale as aforesaid, to the Carolina Central Railway Company, which deed was duly proven and registered in said county of New Hanover. Under a judgment and decree for foreclosure of a mortgage rendered by the Superior Court of New Hanover County, N. C., on the 15th March, 1880,

the property, rights and franchises of the said Carolina Central Railway Company (being covered by said mortgage) were sold at public sale on 31st May, 1880, by Nathan A. Steadman, Jr., and Junius Davis, commissioners duly appointed, and when F. O. French and others, as a committee for certain bondholders, were the last and highest bidders, and purchasers, who, exercising the right granted to them by the act of the General Assembly of North Carolina, ratified March 1, 1873, entitled 'An act to regulate mortgages by corporations, and sales under the same,' designated in the deed which was made then by the commissioners, in pursuance of said decrees in said cause and their said purchase, the manner and style under which they wished to be known as a corporation, which was 'The Carolina Central Railroad Company,' the defendant in this cause, and which corporation was duly organized in accordance with said act last mentioned; the said deed was duly executed 25th June, 1880, and duly registered in said county of New Hanover.

To prevent disputes as to the organization of defendant under said purchase and deed, the General Assembly of North Carolina passed an act entitled an 'An act to perfect the organization of the Carolina Central Railroad Company,' which was ratified the 18th January, 1881; that the proceedings in which the said judgments and decrees of foreclosure of mortgages were made, and the sales thereunder, and the said deeds executed in pursuance thereof, are regular and according to the course and practice of the Courts.

\*　　　\*　　　\*　　　\*　　　\*　　　\*

8. That the right of way from Wilmington to Rutherfordton, passing on the land in complaint, described hereinbefore in this agreement of facts mentioned, and taken and located by said W., C. & R. R. R. Co., was done according to the provisions and in pursuance of the powers to said corporation by its said charter, and work other than that hereinbefore stated was done upon said right of way at various

points, excavations and embankments, &c., between Shelby
and Rutherfordton, in the year 1870, but no work was done
upon that portion of said right of way across plaintiff's land
described in the complaint, except as hereinbefore stated."

Thereupon, the Court made an order appointing commis-
sioners to assess the damages of the plaintiff, &c., and the
defendant excepted.

The commissioners so appointed made report, to which
there was no exception, assessing the plaintiff's damages at
$340. The Court gave judgment in his favor for that sum,
and the defendant appealed.

*Mr W. P. Bynum*, for the plaintiff.
*Messrs. T. H. Cobb* and *John Devereux, Jr.*, for the defendant.

MERRIMON, J. (after stating the case.) The assignment of
error is so indefinite that we can scarcely discern what it is.

As well as we can learn, the appellant insists that its right
of way across the appellee's land mentioned was acquired
by force of the charters and the long possession of the former
corporations under which it claims, and through which it
derives its title to the same; that if any right to damages
ever arose on account of such right of way across the appel-
lee's land, it arose long before he became the owner thereof,
and in favor of the former owner thereof under whom he
claims, and therefore the appellee cannot maintain this pro-
ceeding. It further insists that if such corporation, or any
one of them, was liable in the past for such damages, it is
not; that it did not succeed to such liabilities, and that the
defendant's right, if he ever had any, is barred by the Statute
of Limitations.

In our opinion the grounds of error assigned are unfounded,
and the appellant is clearly liable for the value of the land—
the damages—assessed against it. This appears from the
nature of the rights, property and advantages it acquired,

and the duties and obligations it assumed, by its creation and by its purchase of the right of way, and the other property of the corporations mentioned, from which it derives title mediately and immediately, and statutory provisions bearing upon and applicable to it.

As appears, it is the successor, mediately, of "The Wilmington and Charlotte Railroad Company," afterwards styled "The Wilmington, Charlotte and Rutherford Railroad Company." The charter of that company (Acts 1854–'55, § 28) provided, as to damages occasioned to individuals by the location and construction of its right of way, as follows: "That in the absence of any contract or contracts in relation to the land through which said road or any of its branches may pass, signed by the owner thereof or his agent, or any claimant or person in possession thereof, which may be confirmed by the owner thereof, it shall be presumed that the land over which said road or any of its branches may be constructed, together with a space of one hundred feet on each side of the center of said road, has been granted to said company by the owner or owners thereof; and the said company shall have good right and title thereto, and shall have, hold and enjoy the same so long as the same shall be used for the purposes of said road, and no longer, *unless the person or persons owning the land at the time that part of the said road which may be on said land was finished, or those claiming under him, her or them, shall apply for an assessment of the value of said lands, as hereinbefore directed, within two years next after that part of said road which may be on the said land was finished,*" &c.

The immediate successor of the last company was "The Carolina Central Railway Company," and its charter (Acts 1872–'73, ch. 75, §§ 11, 15) contains the same provision last above recited, and it is authorized to purchase the property of "The Wilmington, Charlotte and Rutherford Railroad Company," and to succeed to and "thenceforth have, hold,

possess and be entitled to the said railroad, extending from Wilmington to Rutherfordton, about two hundred and fifty miles, and *its contracts, franchises, rights, privileges and immunities*, and all the estate and property of every description, real and personal, belonging to the said Wilmington. Charlotte and Rutherford Railroad Company, and by such purchase the said company hereby incorporated shall acquire all the rights, privileges and immunities conferred on the Wilmington, Charlotte and Rutherford Railroad Company by its charter and amendments made thereto."

The appellant is the immediate successor of the last above named "The Carolina Central Railway Company," taking and having the name "The Carolina Central Railroad Company." The latter was organized and purchased the right of way, other property and franchises of the former under authority conferred by a power of sale contained in a mortgage foreclosed as allowed by the statute (*The Code*, §§ 697, 698), and its organization was ratified and made effectual by the subsequent statute (Acts 1881, ch. 5, § 1), and it is therein expressly "declared to be a lawful corporation, *succeeding to* and legally possessed of all the rights, powers, privileges and franchises which were owne l and possessed by the former corporation, the Carolina Central Railway Company, on and prior to the day of the sale, to-wit, the thirty-first day of May, one thousand eight hundred and eighty," and its right to the right of way is again ratified by the statute (Acts 1885, ch. 239, § 4).

The statute (*The Code*, § 698) above cited applies to the appellant as to its organization, rights and duties as the successor of "The Carolina Central Railway Company," and it provides among other things that "the corporation created by or in consequence of such sale and conveyance shall succeed to all such franchises, rights and privileges, and *perform all such duties* as would have been or should have been performed by the first corporation but for such sale and con-

veyance, save only that the corporation so created shall not be entitled to the debts due to the first corporation, and shall not be liable for any debts of or claims against the first corporation," &c., &c.

This résumé of the facts and the statutory provisions applicable show that the appellant is the successor of the two former corporations mentioned; that it has purchased and owns the property that formerly belonged to them respectively, in the order of their existence, including the right of way, and has succeeded to and become the owner of the franchises, rights, privileges and immunities that belonged to them, and it took such parts of the right of way located but not perfected in the condition and subject to the burdens incident to such perfection as they came to it—that is, it had the right to perfect and complete its incomplete right of way, and it became liable to pay damages to the lands of individuals occasioned thereby. It would be unreasonable and unjust to hold that it took the incomplete right of way free from liability for damages or the value of the land appropriated to individuals occasioned by perfecting it. There is nothing in the statutes applicable nor in the nature of the matter that renders it necessary to so hold. Such liability grows out of the exercise of the rights, franchises, privileges and immunities the appellant purchased, and arises out of the exercise of them subsequent to the purchase. It purchased an incomplete railroad; in the exercise of its rights and powers to complete it, it was bound to pay for its incomplete right of way so far as incomplete, as well as for the incomplete grading, cross-ties, iron, and other necessary things.

The contention that any right to such damages or value of land appropriated accrued many years ago in favor of a former owner of the lands mentioned, is not tenable. No doubt such owners had a right to have damages or the value

101—40

of the land assessed when the line of the road was at first located, and he might have insisted upon it, but he waived it, probably on the ground that the real damage had not then been done. But the statute gave the plaintiff the right to claim such damages. It (Acts 1854–'55, ch. 225, § 28; Acts 1872–'73, ch. 75, § 11) provides, among other things, that " the person or persons owning the land at the time that part of the railroad which may be on said land, or those claiming under him, he or them, shall (may) apply for an assessment of the value of said lands, as hereinbefore directed, within two years next after the part of said road which may be on said land was finished," &c. Such assessment embraces the damages; its effect is to give and perfect the right of way in the railroad company, and to assess the value of the land taken under existing circumstances, as they affect the immediately adjoining lands. Thus, if the right of way taken would, in the use of it, very injuriously affect the adjoining lands, such fact would enhance the assessment. This is to be made in the light of the circumstances of the land, the value of which is assessed. The value assessed is really the damages contemplated by the statute.

Neither the appellant nor either of its predecessors was bound to wait and allow the appellee or the former owner of the land to apply for such assessment; either of them might have made application when the line of the road was first located, or afterwards, to have the land for the right of way condemned. The statute makes ample provision in such respects.

It thus appears that the appellant is liable for the value of the land—the damages—assessed, and that the statute gave the appellee, as the owner of it at the time the railroad was finished, the right to apply for and have such assessment.

This proceeding was begun within two years next after the road was finished, and is, therefore, not barred by the statute.

There is no error.                    Affirmed.