## J. T. BEATTIE v. THE CAROLINA CENTRAL RAILROAD COMPANY.

*Condemnation of Land—Eminent Domain—Contract—Deed— Easement—Abandonment—Statute—Evidence.*

In 1885, C. and others executed to the Wilmington, Weldon and Charlotte Railroad Company an instrument, not under seal, stipulating that the makers "do hereby relinquish to the said company the right-of-way for said road through all and every piece of land owned by us severally in the county of Cleveland, and we do this in consideration of the prospective advantage which may accrue to us, arising from the road's location through our county." Prior to 1860, the company surveyed the line of its road through C.'s lands and began the construction, but, in that year, suspended all work, which was not resumed until 1885 by the Carolina Central Railroad Company, the successor of the original corporation. While the work was thus suspended, C. sold and conveyed to the plaintiff, who entered and, for seventeen years, used and cultivated the portion of the lands claimed by the railroad in the usual course of agriculture: *Held—*

1. The instrument, because of the absence of a seal and lack of apt legal terms, was not a deed effectual to convey an interest in land.

2. It did not convey an easement, but, at most, only constituted an executory contract to convey an easement whenever the road should be located on and completed through the lands, provided that result was produced within a reasonable time.

3. While the mere non-user of an easement may not defeat or impair the claim of a railroad company to a right-of-way for an unfinished line, yet, when such non-user is accompanied by such acts of dominion for a long period by the owner of the servient lands as are inconsistent with the nature of the easement, and as indicate an intention to abandon it, the easement will be lost and the owner of the fee will regain the title.

4. A title to a right-of-way can only be acquired (1) by condemnation and compensation in the manner provided by law; (2) by formal deed of conveyance from the owner; (3) by the performance of some act or payment of some consideration by virtue of an executory agreement enforceable in a Court of Equity between the owner and the corporation; (4) by completing a road over lands, and thereby exposing the corporation to liability for compensation, when such right and liability are provided by statute.

5. The conduct of the company in relation to the right-of-way had been such as to justify the belief on the part of the plaintiff, when he bought in 1869, that the purpose of completing the road had been abandoned.

6. As the plaintiff had no notice of the contract signed by C., his bargainor, the fact that grading had been done on the land did not preclude the plaintiff from claiming damage when the grading should be completed.

7. If C. had not aliened the land, and had brought the action himself, the Courts would not, in the exercise of their discretionary power, enforce the agreement by requiring C. to perform his contract made upon the implied stipulation that the road would be completed within a reasonable time by the company or its assignees.

8. As the defendant is deemed to have abandoned its claim under the contract, it is not necessary to determine how long an adverse occupancy by the plaintiff was necessary to divest the equitable right to the easement.

This was a proceeding for condemnation of right-of-way, tried at September Term, 1889, of the Superior Court of CLEVELAND County, *Connor, J.*, presiding.

The facts agreed were as follows:

1. That on 27th October, 1855, and for some time previous thereto, the land described in the complaint was owned and possessed by Wm. H. Cabiniss, under whom plaintiff claims title, having purchased in 1869, and that plaintiff is now the real owner of said land.

2. That on the said 27th October, 1855, the said Wm. H. Cabiniss, being then the owner of said land, executed and delivered to the Wilmington, Charlotte and Rutherford Railroad Company, under whom defendant claims title, as hereinafter stated, a paper-writing, of which the following is a copy, to-wit:

"STATE OF NORTH CAROLINA, }
    Cleveland County.            }

"This indenture witnesseth that we, whose names are hereunto subscribed, do hereby relinquish to the Wilming-

ton, Charlotte and Rutherford Railroad Company the right-of-way for said road through all and every piece or parcel of land respectively owned by us, severally, in the county of Cleveland, and we do this in consideration of the prospective advantage which may accrue to us arising from the road's location through our county.

"Witness our names, October 27, 1855.

"WM. H. CABINISS."

3. That this paper-writing had reference to the land described in the complaint, and that it was duly proven, probated and registered, as required by the statute, 28th June, 1886.

4. That said Wilmington, Charlotte and Rutherford Railroad Company thereupon proceeded to locate and did locate their road over said land as hereinafter described; and upon said land a deep cut was excavated and a long embankment erected about the year 1856 to 1860, and that in 1885, when defendant completed its road, as hereinafter stated, the said cut and embankment were still distinct, though on the latter had grown up some pine trees in part, and other part of it was cultivated and had been since 1869.

5. That the other facts in this case are exactly as stated in the facts agreed upon in writing by the undersigned attorneys in the case (*C Hendrick* v. *C. C. Railroad Co.*) now pending in this Court, and we hereby adopt said facts as filed in said case as the facts in this, in addition to those above stated, with the following exceptions, to-wit:

(1). That paragraph No. 1 thereof be stricken out.

(2). That the portion in reference to the Forbis heirs being minors and non-residents be stricken out.

(3). That the plaintiff's name be substituted in place of "C. Hendrick," wherever the latter occurs.

Upon these facts the following order was made by Judge CLARK:

"Upon the foregoing facts agreed, the same being presented to the presiding Judge, and a jury trial being waived, it is adjudged that the petitioner is entitled to the relief demanded in his petition.

"And it is further ordered, that E. D. Dickson, D. S. Lovelace and S. G. Brice be, and they are hereby appointed, commissioners to value the right-of-way over the land described in the complaint of petitioner and as therein described. They shall proceed according to the directions of respondent's charter, first giving to the parties twenty days' notice of the time and place of making said valuation, and shall report their proceedings hereunder under their hands and seals of this Court.   Exception by defendant."

On the coming in of the report the following judgment was entered:

"This cause coming on for final hearing upon report of the commissioners to assess damages to the plaintiff for the causes stated in the complaint, and said commissioners having made due report thereof, in which they assess plaintiff's damages at two hundred and eighty-five dollars, and there being no exceptions filed to said report: It is now, on motion of McBrayer & Ryburn, attorneys for plaintiff, ordered, considered and adjudged that said report be and the same is hereby in all things confirmed, and that the plaintiff have and recover of the defendant the said sum of two hundred and eighty-five dollars ($285), with interest thereon from the 5th day of August, 1889 (the term to which said report was returned), till paid, and the costs of this action, to be taxed by the Clerk."

The defendant appealed, relying in part upon the exception previously entered to the ruling of Judge CLARK.

Mr. R. McBrayer, for plaintiff.
Messrs. J. B. Batchelor, John Devereux, Jr., and T. H. Cobb, for defendant.

AVERY, J.—after stating the facts: In *Hendrick* v. *Railroad*, 101 N. C., 617, it was clearly settled that the bargainee of an original land-owner, upon whose land the Wilmington, Charlotte & Rutherford Railroad Company had located its line and done a portion of the grading, without laying the superstructure, before the year 1860, was not barred of recovery in a proceeding instituted within two years after the completion of the line over his land by the defendant company, which purchased the franchise of the original company making the location, and succeeded to its liability under its charter to pay such damage as might be assessed in a proper proceeding commenced by the owner within two years after the road should be finished over his land.

While it is admitted that the action was begun within two years after the portion of the road located on plaintiff's land was completed, the defendant insists that the plaintiff is estopped from claiming damages for said right, because his title was acquired in the year 1869, through and under one William H. Cabiniss, who, being then the owner, was one of the persons who executed, on the 27th of October, 1855, the following paper:

"STATE OF NORTH CAROLINA, }
          Cleveland County.       }

" This indenture witnesseth that we, whose names are hereunto subscribed, do hereby relinquish to the Wilmington, Charlotte & Rutherford Railroad Company the right-of-way for said road through all and every piece or parcel of land respectively owned by us, severally, in the County of Cleveland, and we do this in consideration of the prospective advantage which may accrue to us, arising from the road's location through our county.

"Witness our names, October 27, 1855.

                                        "WM. H. CABINISS."

The Carolina Central Railroad Company succeeded to the rights of the Wilmington, Charlotte & Rutherford Railroad Company in the year 1873, and was organized after a foreclosure sale in the year 1880, the facts being fully recited in *Hendrick* v. *Railroad, supra.* Between the years 1856 and 1860 the original company surveyed its line of road through the land of the plaintiff, then owned by said Cabiniss, and after excavating a deep cut and making a fill on the premises suspended work. Neither the Wilmington, Charlotte & Rutherford Railroad Company nor the defendant company assumed any control of the right-of-way on plaintiff's land, nor caused any grading or other work of construction to be done on said land or on any part of their line between Shelby and Rutherfordton from the year 1860 till the year 1885, when the work was resumed and the grading finished so that the trains ran from Shelby to Rutherfordton over plaintiff's land the next year. During this suspension of operations for twenty-five years, Cabiniss sold to the plaintiff, who had been plowing over and cultivating a portion of the land on which the location was made for about seventeen years, when the defendant entered upon his premises and began the word of construction afresh.

Passing over the question whether the description in the contract offered as evidence of title by the defendant was too vague to be enforced after it was executed, or admitting, for the sake of argument, that it was sufficiently definite because its location could be made certain by a survey, which was contemplated by the parties in entering into the agreement, we must still bear in mind the fact that the paper-writing is not a deed, because it is not sealed and wants apt legal words to make it an effectual conveyance of an interest in land. At the time of its execution it could have been construed in the most favorable view for the company only as an executory contract to convey the right-of-way whenever the road should be located and finished over the land of Cabiniss.

5 Am. and Eng. Enc., page 441 (17, 3), and note 3; *Avent* v. *Arrington*, 105 N. C., 377.

The only consideration moving Cabiniss was the benefit to be derived from finishing and operating the line of railroad over his land. Under this agreement, entered into October 27th, 1855, the contracting corporation marked out a proposed line across his land in the year 1856, and during the four years immediately following made the excavation heretofore mentioned. The work of construction then ceased for twenty-five years, during which period there was no obligation on the part of the Wilmington, Charlotte and Rutherford Railroad Company to finish its line from Shelby to Rutherfordton. Neither Cabiniss nor his grantee Beattie could compel that company or its successor, the defendant, to complete the road over the land, and impart to it thereby the enhanced value which it was supposed would be consequent upon its completion. The owners of the land would have been helpless, if, during that long period of time, the line had been diverted north or south of that surveyed and partially graded, or if Shelby had become the settled western terminus. If Cabiniss and his alienee held one hundred feet extending through the land, subject to the right of the corporation to treat them as tenants at sufferance at the option of its managers for seventeen years, when would that relation cease by non-user on the part of the company and adverse occupation by the servient owner? It was contended for the defendant on the argument that the facts in this case brought it within the principle decided in *Railroad* v. *McCaskill*, 94 N. C., 746, and, therefore, that upon the execution of the paper-writing by Cabiniss, or certainly after fixing the location by a survey and partial completion of the grading on his land, the contracting company, and subsequently its successor, acquired an easement of infinite duration, and a right in the land that could not be barred by adverse possession. We cannot concede the correctness of

this view as an interpretation of *The Code,* or an inference or deduction from the authority relied upon (*Railroad* v. *McCaskill, supra*).

It is provided in section 150 of *The Code* that "No railroad, plank-road, turnpike or canal company shall be barred of or presumed to have conveyed any real estate, right-of-way, easement, leasehold or other interest in the soil *which may have been condemned or otherwise obtained for its use* as a right-of-way, depot, station house or place of landing, by any statute of limitation or by occupation of the same by any person whatsoever." The plaintiff's land has never been condemned, and, therefore, unless the defendant company had obtained the easement otherwise before he began to cultivate the right-of-way, he will not, by reason of this section, be deprived of whatever benefit might, in other cases, have accrued to him from his adverse possession. The word "obtained" must have been used in the sense of "secured" or "acquired." The consideration of the contract was, by its express terms, the prospective advantage which might accrue to the signers, arising from the location through their county. No benefit could be derived by the owner from the mere act of surveying the line across his premises and indicating it by stakes, nor even from making excavations or fills, so long as the corporations failed, as they did for thirty-one years, to complete and equip the road so as to furnish him the means of shipping the products of the soil, and of ready communication with and access to the commercial centers of the country. The location, in the restricted sense of surveying and adopting the line in which engineers use it in this country, would not of itself have been attended with the slightest advantage to the owner. The defendant and its predecessor failed for over thirty years to finish and for twenty-five years to work upon or assert any dominion over the right-of-way, and yet, when it at last reached the conclusion that the work should be completed, insisted that

the Courts should so construe section 150 of *The Code* as to
treat the plaintiff as its tenant at sufferance of the tract and
a strip of the one hundred feet on either side of it, which he
had been cultivating continuously for sixteen years. Neither
the defendant, nor those under whom it claims, had any
title to the easement. Upon the completion of the road
over plaintiff's land within a reasonable time, the corpora-
tion might have relied upon the equitable right arising out
of the agreement, either in a suit to compel the plaintiff or
Cabiniss to convey the easement, or as a defence in a pro-
ceeding instituted by either of them to have the right-of-
way formally condemned and the damages assessed. But
the corporation had not obtained the easement, and had not
given the promised *quid pro quo* for it, and while its man-
agers were considering the question whether they could or
would ever give the plaintiff the contemplated advantages
of a completed railroad, the plaintiff was plowing over and
raising crops upon the very land marked out for the loca-
tion of the track, an assertion of dominion over it that was
utterly inconsistent with the active exercise of the defend-
ant's right to the easement, by which alone it could perfect
its title to it. If the easement had not been acquired by
condemnation, or otherwise obtained, then the statute (*The
Code,* § 150) has no application, and we may leave its pro-
visions out of view in determining the question whether the
conduct of the parties was such that the defendant would be
deemed to have abandoned or allowed to become extin-
guished any right growing out of the execution of the
agreement by Cabiniss. In other States, where corporations
are not protected by such a statute, and in England, it seems
to be settled that while mere non-user may not defeat or
impair the rights of a railroad corporation in a located and
unfinished or unoccupied line, the owner of the fee may
regain the title (unencumbered by the claim to an easement

108—28

therein) to the whole or any part of a location by adverse occupancy for the requisite statutory period where the conduct of the company has been such as to indicate its intention to abandon the use of the line; and this rule has prevailed even where the right-of-way has been condemned and in some instances paid for. 2 Woods R. L., § 240; *Norton* v. *Railroad*, L. R., 13 ch., Div. 268. The failure to complete a road, and permitting the owners to use the land upon which its line is located for the prescribed statutory period and for purposes inconsistent with its occupation and use as a railroad, is evidence of an intention to surrender the easement, and has been held to be an abandonment of it, because such conduct is calculated to induce the belief that the corporation does not propose to again assert its rights Mills on Em. Dom., § 57; *Hooker* v. *Turnpike Co.*, 12 Wend., 371; *Proprietors of Locks* v. *Railroad*, 104 Mass., 1; *Benedict* v. *Heineberg*, 43 Vt., 231; Angell on Water-courses, 252, 252a; *Jennison* v. *Walker*, 11 Gray, 423; *Taylor* v. *Hampton*, 2 McCord (S. C.), 96.

The use of the land by plowing up and cultivating the very portion of the two hundred feet of right-of-way marked out for the track was utterly inconsistent with its actual occupation as the road-bed of the defendant company. *Crain* v. *Fox*, 16 Barb., 187; *Pope* v. *Devereux*, 5 Gray, 409. He was planting yearly crops that the defendant must of necessity destroy if it should determine to complete its line to Rutherfordton. His claim that the right to the servitude has been abandoned and lost, is founded not simply upon non-user on the part of the defendant, but upon the claim that this adverse occupation and use of the land on his own part is irreconcilable with the acknowledgment of the right to the easement in the corporations, and that therefore he is entitled to the benefit of the bar of any statute that may apply. Angell, *supra*, §§ 244, 246, 252; *Bonnon* v. *Angier*, 2 Allen, 129. The fact that the plaintiff bought in the year

1869, when there had been a cessation of the work of construction for nineteen years, according to many authorities, made it incumbent on the corporation claiming the easement to show an intention to resume control of the right-of-way within a reasonable time.  *Corning* v. *Gould,* 16 Wend., 531; *Taylor* v. *Hampton, supra; Bank* v. *Nichols,* 64 N. Y., 65.  Where rights-of-way are actually condemned, Lewis (in his work on Em. Dom., § 656) says: " The weight of authority undoubtedly is that in the absence of statutory provisions on the question, the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property sought, and that even after confirmation or judgment the purpose of taking the property may be abandoned without incurring any liability to pay the damages awarded."  The author states that the doctrine laid down by him is sustained in all of the appellate courts of the States where the question has arisen, except those of New York and Nebraska.  *Ibid.,* p. 844; *Chicago* v *Burton,* 80 Ill., 482.  An executory agreement to convey, founded upon the consideration of completing a road over the land, places the parties in relations, in some respects, similar to those which ordinarily exist after condemnation proceedings, and before a corporation has elected to use the easement and has paid for it or incurred a liability to make compensation for it.  Where there is neither a conveyance of the easement, nor an executory contract in reference to conveying it, the corporation does not acquire a perfect title until it either satisfies the judgment for damages for a condemned right-of-way across a tract of land, or finishes its road over it, or in some way incurs such liability to pay the resulting damages when assessed.  Lewis, *supra,* § 306.  Cabiniss agreed, in effect, that the Wilmington, Charlotte and Rutherford Railroad Company should have the right to the easement whenever it should give him the advantages and benefit arising from finishing its line over his land.  Our case falls within

the.rule, which seems to be settled by authority, that perfect title to a right-of-way can be acquired only—

1. By a formal deed of conveyance from the owner;

2. By condemnation and the actual payment of just compensation ascertained in the mode appointed by law;

3. By the performance of an act, or payment of a sum, or by furnishing any consideration agreed upon in some executory contract, which a court of equity will enforce, between the owner and the corporation; or,

4. Where the general law or charter sanctions such a course, by completing the road over his land, and thereby incurring the liability to pay damages whenever assessed on petition and adjudged to be due. *Beasley* v. *M. L. W. Co*, 13 Cal., 306; Lewis, *supra*, pp. 404, 405, §§ 306 and 656; *O'Neal* v. *Freeholders of Hudson*, 41 N. J., 172; *St. Louis Railroad Co.* v. *Titers*, 68 Ill., 144.

The charter (Laws 1854–'55, ch. 225, § 28) provides "That in the absence of any contract or contracts in relation to the land through which said road or any of its branches may pass, signed by the owner thereof or his agent, or any claimant or person in possession thereof, which may be confirmed by the owner thereof, it shall be presumed that the land over which said road or any of its branches may be constructed, together with a space of one hundred feet on each side of the center of said road, has been granted to said company by the owner or owners thereof, and the said company shall have good right and title and shall have, hold and enjoy the same so long as the same shall be used for the purposes of said road, and no longer, unless the person or persons owning the land at the time that part of the road which may be on said land was finished, or those claiming under him, her or them, shall apply for an assessment of the value of said lands as hereinbefore directed within two years next after that part of said road which may be on the said land was finished," etc.

It appears, therefore, that where there is a contract, the charter leaves it to be interpreted as any other agreement between the parties would be, according to its terms. How, then, would an agreement on the part of one person that he relinquished the right to a private way over his land to an adjacent land-owner for the consideration of getting a good outlet for himself to a neighboring town be construed if the party proposing to construct the road should grade a portion of it within five years and then desist for twenty-five years, and until a grantee of his neighbor had plowed over the proposed line of road and cultivated the land for sixteen years? If, in such case, the person seeking to get the outlet would be deemed to have abandoned his right under the original contract and driven to the necessity of pursuing the plan pointed out by statute for the condemnation of cart-ways, then we think that in this case, as between the plaintiff and the defendant company, their relations and rights would be the same as if no paper had been signed by Cabiniss in 1855. When the plaintiff bought the land in 1869, the corporation had desisted from the work of construction for nine years before, and, during the five years that had then elapsed after the close of the war, had asserted no claim to the right-of-way, and had taken no steps looking to the completion of its road over it. Its conduct had been such as to induce the reasonable belief in his mind that their claim had been extinguished, and that he would take the land discharged from any right to subject it to the servitude without compensation by the subsequent completion of the road over it. The predecessor of the defendant had allowed an unreasonable time to elapse without evincing any intention to resume control of the right-of-way, and after the plaintiff paid his money for land apparently subject to no such right, it would be inequitable to allow the defendant to appropriate his land without compensation. *Hooker* v. *Turnpike Co.*, 12 Wend., 371. Even if mere non-user would not, as between the

original parties to the contract, have extinguished the right (which is not admitted), the rule is different where the land is sold to a purchaser for value who is misled by the conduct of the corporation. *Corning* v. *Gould, supra.* It appears as a fact agreed that the contract signed by Cabiniss was not registered until the 28th of June, 1886, while it does not appear that the plaintiff had actual notice that any agreement had been entered into between the Wilmington, Charlotte and Rutherford Railroad Company and Cabiniss when he purchased. The deserted excavation was not in the actual possession of the corporation. The plaintiff, seeing the unfinished grading done upon the land, might naturally infer, in the absence of any record of condemnation proceedings or registration of a conveyance (if such registration would have been noticed), that Cabiniss was awaiting the completion of the road over the land to institute proceedings for damages, and that the right to exact compensation, if the work should be resumed, passed with the title to the land to him. *Hendricks* v. *Railroad, supra.* Being misled by the long delay of said corporation, and having no actual notice of the equitable interest claimed by it, we think that the plaintiff took the title free from any right growing out of said contract to subject it to the servitude without compensation other than the benefit arising from completing the road. *Francis* v. *Love,* 3 Jones' Eq., 321.

As we have already stated that the defendant could not, at best, claim that he held a deed of conveyance for the right-of-way, but only the equitable right to demand a conveyance upon the completion of the road over the plaintiff's land. He might, in order to determine his rights, have taken the initiative when the portion of the road on plaintiff's land was finished, and have brought an action to compel the plaintiff to convey the easement, or he might have taken the chances of acquiring the easement by the *laches* of the plaintiff, if the latter failed to file his petition within two years, and when

the latter instituted proceedings have set up the contract as a defence, as he has done. But, in either event, whether the corporation is the actor or not, its claim is equivalent to a prayer for the specific performance of the contract. It is well settled that delay on the part of a vendee or proposed purchaser, accompanied by acts apparently inconsistent with the purpose of performing the contract will, if not waived by the vendor, deprive the former of the right to demand a specific performance of the contract. *Francis* v. *Love*, 3 Jones' Eq., 321; *Love* v. *Welch*, 97 N. C., 200; *Holden* v. *Purefoy*, decided at this term; *Mizell* v. *Burnett*, 4 Jones, 249.

In the case of *Crain* v. *Fox*, 15 Bush (N. Y.), 187, it was held that plowing over a right-of-way was an act inconsistent with the claim to the easement, and in *Carning* v. *Gould*, *supra*, that the erection of a fence across it constituted an adverse holding. See also *Pope* v. *Devereux*, 5 Gray, 409.

Kent says (3 Vol., 552): "If the act which prevents the servitude be incompatible with the nature or exercise of it, and be by the party to whom the servitude is done it is sufficient to extinguish it, and when it is extinguished for a moment it is gone forever." The same principle is laid down in numerous cases. *Canny* v. *Andrews*, 123 Mass., 155. In the case of *Henderson* v. *Railroad*, *supra*, it was held that non-user for ten years was an abandonment by a river company of its right-of-way. *Horner* v. *Stillwell*, 35 N. J., 307; *Voight* v. *Railroad*, 19 N. J., 143; Mills, *supra*, § 57. We have not overlooked the fact that the statute of limitations was not running from May, 1861, till January 1st, 1871. But we forbear to pass upon the effect of the adverse possession as a bar to the assertion of defendant's claim under the contract, or to point out a particular statute as applicable, and rest our decision upon other ground—

1. The conduct of the company, through which defendant claims, had been such as reasonably to lead the plaintiff to believe, when he bought in 1869, that it had abandoned the purpose of completing the road.

2. The plaintiff bought without actual notice of the contract with Cabiniss, and the fact that grading had been done on the land did not preclude the idea that the damages might be assessed if it should be completed under the charter.

3. If Cabiniss were substituted as plaintiff in place of Beattie, or if it appeared that the latter had actual notice of the contract, we think the Courts should not, in the wise and just exercise of their discretionary power, enforce the agreement with Cabiniss for the benefit of the defendant, after so long a delay on the part of the latter, and those through whom it claims, in performing its implied stipulation to finish the road within a reasonable time, and when their conduct was calculated to lead the owner to believe that the claim of an equitable right in his land, under the contract, had been abandoned. There is no error, and the judgment must be affirmed.

Affirmed.