NORA DARGAN et al. v. THE CAROLINA CENTRAL RAILROAD COMPANY.

*Right of-way—Eminent Domain—Statute of Limitations.*

1. The right of the State to take private property under the power of eminent domain rests upon the ground that there is a public necessity for such taking, and can only be exercised when the law provides the means of giving adequate compensation to the owner.

2. The statutory provision allowing private property to be taken under the right of eminent domain must be strictly pursued, and the right of the owner to obtain compensation depends on whether the corporation has obtained a vested right.

3. An interest in the entire right-of-way does not vest in the corporation unless it takes actual possession in the exercise of the privilege granted it; but *it seems* that, where the corporation enters, its constructive possession extends to the boundary of the right-of-way given in the charter.

4. Where the charter of a railroad provided that, in the absence of any contract with the owner, it should be presumed that the land over which the road runs, with a space of 100 feet on each side, has been granted to the corporation, and the corporation took a deed for less than 100 feet within two years after its completion, this prevented the limitation in the charter from applying, and the corporation got no title to land lying outside of the deed, but within 100 feet of the track, by the lapse of the two years.

CIVIL ACTION, tried on issues joined before the Clerk, before *McIver, J.,* and a jury, at August Term, 1893, of UNION Superior Court.

The facts were as follows:

1. That C. N. Simpson owned the whole of lot No. 42 when the defendant railroad company entered upon and completed its road across the same.

2. That the defendant railroad company entered upon and completed its road across said lot in November, 1874, its track and actual possession being upon and confined to that portion of said lot conveyed to the defendant company in the deed above set forth.

3. That all the land embraced in the said deed of C. N. Simpson, which is the southwestern half of said lot No. 42, is within 100 feet of the center of the track of the defendant railroad company, as laid down by it when it entered and completed its road across the northeastern half of said lot No. 42, in November, 1874.

4. The several acts of the Legislature chartering the defendant company, and the companies to whose rights it succeeded, were considered in evidence, and they are hereby referred to as a part of this case.

C. N. Simpson, a witness for the plaintiff, testified as follows: "Neither myself nor the railroad company instituted proceedings for condemnation. Colonel Fremont was superintendent at the time the railroad entered and completed its road across lot No. 42."

*Exception 1.*—Question: "State whether the deed of July the 7th, 1875, made to the C. C. Railroad Company for the northeastern half of lot No. 42, was the consummation of a contract with the said company, by which you consented for said company to build its road across your land?"

The defendant, waiving objection to the leading character of the question, objected because the same was incompetent, and it did not state that the contract was in writing. Witness then stated that there was no written contract. Objection sustained. Exception by plaintiffs.

Question: "Why did you not convey the whole of lot No. 42 to the railroad company?"

After objection by defendant the witness stated that it was because Mr. Frye said the company did not need any more. Mr. Frye was civil engineer, but I think he was acting as road master at the time. He surveyed that part of the lot I conveyed to the company, and it was to him I delivered the deed.

.*Exception 2*.—Upon the foregoing evidence and admissions the Court stated that it would charge the jury that more than two years having elapsed after the completion of the railroad through the land, and before the commencement of this suit, it would instruct the jury that the plaintiffs' claim for compensation was barred by the statute of limitations and the plaintiffs could not recover. Plaintiffs excepted.

The Court so instructed the jury, whereupon the jury responded to the issues as follows—

" 1. Is the *feme* plaintiff the owner of the land described in the complaint?" Answer: " No."

" 2. Is her right to recover compensation barred by the statute of limitations?" Answer: " Yes."

Plaintiffs excepted, and appealed from the judgment for defendants.

*Messrs. D. A. Covington, F. I. Osborne* and *Haywood & Haywood*, for plaintiffs (appellants).

*Messrs. John D. Shaw* and *Batchelor & Devereux*, for defendant.

AVERY, J.: The right of the State to take private property rests upon the ground that there is public necessity for such appropriation, and can be exercised only where the law provides the means of giving adequate compensation to the owner. Where the power to appropriate has been given by statute, without sufficient provision for the payment of damages, it has been held to be the intent of the Legislature that the right of eminent domain should be exercised only after

first obtaining the consent of those affected. *Railroad Co.* v. *Railroad Co.*, 2 Gray, 1; *Matter of Flat Bush Avenue*, 1 Barb., 286; *Matter of Hamilton Avenue*, 14 Barb., 414; 1 Potter on Corp., § 168.

Text-writers and Courts classify the methods of obtaining the right-of-way for railroads as of three or four kinds, the difference between two of the modes being only that which arises from entering into an executory contract for purchase in one instance, and taking an executed conveyance for the same interest in the other. 1 Harris on Dom. Ry. Corp., 35; *Beattie* v. *Railroad*, 108 N. C., 436. The charter of the defendant company (Acts of 1854–'55, ch. 55, §§ 26 and 28) followed substantially the usual formula adopted in framing nearly all of the earlier acts of incorporation in this country, when it provided that " in the absence of any contract or contracts in relation to land, through which said road or any of its branches may pass, signed by the owner thereof, * * * it shall be presumed that the land over which said road or any of its branches may be constructed, together with a space of one hundred feet on each side of the center of said road, has been granted to said company by the owner or owners thereof," etc. Where no such contract was shown, the undisturbed use by the company of such right-of-way over a tract of land for two years after the road should be finished and running over it, by the terms of the act, raised the presumption of a grant of the easement by the owner. *Hendricks* v. *Railroad*, 101 N. C., 623; *Beattie* v. *Railroad, supra*. Though the provision in reference to a previous attempt to make some agreement with the owner, by which the necessity for instituting condemnation proceedings might be obviated, was in different charters couched in terms somewhat variant, many of the ablest Courts in this country construed them as imposing the duty upon corporations as a condition precedent to the exercise of the right of condemnation, of alleging and proving that an effort had been made to pur-

chase the privilege of passing over the land sought to be condemned directly from the owners, or that such proprietors were not *sui juris.* Lewis on Em. Domain, § 301, with note 2, page 394, and notes 6 and 7, page 395; 1 Wood Railway Law, page 711. While it is not necessary to give our approval to this doctrine, which has no direct application to our case, it illustrates the rule that statutory provisions for taking property in the exercise of eminent domain must be always construed strictly. 1 Wood's R. L., page 643 and note 2.

The right of the owner to recover damages for the taking by a railway company depends in any case upon the answer to the test question, whether the corporation has already acquired a vested interest in the land, and whether the owner has a still subsisting right to recover damages for the assertion of dominion over it. *Westbrook* v. *North*, 2 Me., 179; *Hampton* v. *Coffin*, 4 N. H., 517; *Railroad* v. *Nesbit*, 10 Howard (U. S.), 395. An interest in the entire right-of-way of one hundred feet on each side would not vest in the company, unless it took possession in the exercise of the privilege of appropriating private property conferred by the charter (sections 26 to 28), and the correlative right to sue for the damages would not accrue till the title to the interest vested in the company by such unequivocal entry. It was only "in the absence of such a contract as would enable the company to construct and operate its road over the land on which its line was located that its occupation and use of the land for corporate purposes for two years after its line was finished over it could be justly held to have started the statute to running so as to raise a presumption of a grant to the right of-way for one hundred feet on each side of the center of the track." This is not only a fair construction of the language of the charter, but it establishes a rule that is in accord with a familiar principle of the common law in reference to adverse possession.

In order to ripen title in the occupant, "possession (said PEARSON, C. J., in *Osborne* v. *Johnston*, 65 N. C, 26) must be adverse, uninterrupted, open and unequivocal, so as to expose the party to an action. This is the *teste.*" *McLean* v. *Smith*, 106 N. C., 172. The general rule is that when one enters upon land under a deed and occupies some portion of it, his constructive possession extends to the boundary line of his deed, unless, by reason of the lappage of a better title on some part of it, the possession on such interference is deemed in law to be in the claimant under such title. *McLean* v. *Smith, supra.* The company constructed its track in November, 1874, across the Simpson lot, but entirely upon the half of said lot which was afterwards, on July 7, 1875, conveyed to it by Simpson and wife in fee simple. The company did not attempt to enter upon the other half, though it was situate within 100 feet of the center of the track, until within two years before this proceeding was instituted, on the 16th of March, 1893. The plaintiff alleges that there was no attempt to take actual possession of the half of the lot which was conveyed by Simpson and wife to the plaintiff on the 23d of June, 1883, until within such period, and the answer, by evading a direct admission or denial, is deemed to have conceded the truth of the allegation. If the plaintiff had commenced this condemnation proceeding prior to any assertion of dominion by the defendant, the company or its predecessors might well have answered that they had accepted the conveyance from Simpson in lieu of condemnation, and that the plaintiff could not demand compensation for land outside of that covered by its boundaries, certainly until the company should have entered upon and used it for corporate purposes, if at all. We are not called upon to determine whether the plaintiff could have maintained an action for possession and damages for the wrongful withholding of the possession of the land conveyed to her by Simpson. 6 Am. & Eng. Enc, p. 603, and note 3, and p. 606, note 1. It lies,

however, within 100 feet of the center of defendant's track, and if she could have maintained such civil action for the trespass, we think she might, nevertheless, waive the tortious character of the entry, when actually made in the assertion of a claim by the defendant under its charter, and demand compensation in damages for the easement claimed. 6 Am. & Eng. Enc., p. 595, and note 6. The defendant cannot take advantage of its equivocal conduct in confining its occupation for fifteen years to the limits of its deed from Simpson, so that it was not subjected to any liability for trespass beyond its bounds, and then claim the advantage of holding under the privilege granted in the charter up to the margin of the usual right-of-way, instead of to the outer lines of the deed. Even though it may not have been incumbent on the defendant, as a condition precedent to setting up a claim that he acquired an easement in the land from the State in the exercise of the right of eminent domain, to show that he had made an effort previously to purchase the privilege by private agreement, and had failed, yet, if the plaintiff, taking the laboring oar upon himself, proposed to prove that another agreement was made in lieu of instituting condemnation proceedings in 1875, by which the defendant's predecessor accepted (probably for a smaller price) a more restricted territory in fee simple, instead of the easement in a larger boundary, we can conceive of no sufficient ground for objecting to the competency of the testimony. It was only in the absence of such agreement as to the right-of-way that the statute, upon the completion of the line over the land of an owner, was put in motion so as to raise a presumption of a grant of the easement within two years thereafter. The company, like an individual, can acquire a right as an incident to occupation only where the possession is unequivocal. It was clearly competent to show that the agent of the company accepted said deed, because, as he said, the company did not need as much as 100 feet on either side of the center of the

track.   We think that the presumption is, in all cases where
a deed from a landowner to an area more limited than that
allowed by its charter for the location of its line has been
accepted by the company, that the conveyance was, within
the contemplation of the charter, a contract entered into in
lieu of the resort to condemnation proceedings.   In this par-
ticular instance the defendant has no cause to complain, if
the land is really needed for corporate purposes on account
of the growth and development of its business, that the plain-
tiff has waived objection and conceded, instead of contesting,
its right of condemnation.   6 Am. & Eng. Enc., p. 595, and
note 6.   The rights of the defendant are not impaired and
its liabilities are not affected, as a rule, by reason of the suc-
cessive sales of the franchise.   *Hendricks* v. *Railroad* and
*Beattie* v. *Railroad, supra.*

For the reasons given, we think that the Court below erred
in instructing the jury that the plaintiff's claim was barred
by the lapse of time, and a new trial must therefore be
awarded.                                           New Trial.