**Lipman Omensky and Ida Omensky, Defendants in Error, v. George J. Cook Co., Plaintiff in Error.**

**Gen. No. 16,687.**

LANDLORD AND TENANT—*cancellation of lease.* Where the lessee of a saloon cancels the lease under a clause therein permitting cancellation "if a saloon license cannot be obtained for said premises," a directed verdict for rent accruing after such cancellation is proper where it does not appear that a reasonable effort was made to obtain such a license.

Error to the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

ALDEN, LATHAM & YOUNG, for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE FITCH delivered the opinion of the court.

The plaintiff in error, hereinafter called the defend-

ant, has brought this writ of error to reverse a judgment for $80 entered against it in the Municipal Court of Chicago in favor of defendants in error, hereinafter called the plaintiffs.

In January, 1909, plaintiffs leased to the defendant certain premises at the corner of Hastings and Laflin streets, Chicago, for a term of two years, commencing May 1, 1909, and ending April 30, 1911, at a rental of $70 a month. By one clause in the lease it was provided: "If at any time during the term of this lease * * * a City of Chicago saloon license cannot be obtained for these premises, it is hereby agreed that upon the lessee giving thirty days' notice to the lessor, that after the expiration of said notice this lease and agreement shall be null and void." The defendant placed a sub-tenant in possession, who conducted a saloon there until December 3, 1909, when he moved out. A license to keep a saloon upon said premises was issued May 1, 1909, to John Ryan. On November 1, 1909, Ryan assigned his license to one Terry Flahiff, and it was thereupon reissued to Flahiff, authorizing him to keep a dramshop at 2620 Lincoln Avenue, Chicago. On November 27, 1909, the defendant served notice upon the lessors to the effect that in pursuance of the clause in the lease above quoted, it had elected to declare the lease null and void after December 31, 1909, "for the reason that a City of Chicago saloon license cannot be obtained for said premises." The rent for December, 1909, was paid. This suit was brought for the rent for the month of January, 1910, and for damages amounting to $10 for the removal of certain window shades from the premises. At the close of all the evidence, the court directed a verdict for the plaintiff, and judgment was entered as directed. The plaintiffs below have filed no appearance in this court.

The only error discussed by the defendant's counsel is that the court erred in directing a verdict, because (it is said) there is no evidence that Ryan was the

agent of or in any way connected with the defendant, or that he held the license for the benefit of defendant, and "the undisputed evidence is that at the time the notice to terminate the lease was served    *    *    *    no license to conduct a saloon at the premises in question could be obtained."

It will be noted that the language of the lease only permits the lessee to cancel the lease "if a saloon license *cannot be obtained for said premises.*" Webster defines the word "obtain" as follows: "To get hold of by effort, to gain possession of;    *    *    *    to obtain excludes the idea of chance, and implies some effort directed to the attainment of that which is not immediately within our reach. Whatever we thus *seek* and *get,* we *obtain,* whether by our own exertions or those of others." It was shown by the evidence that no license was issued to any one by the City of Chicago on November 1, 1909, to keep a saloon upon the premises in question. It was also shown that by the saloon license ordinance of the City of Chicago, no license can be issued to a corporation, and that the number of licenses is limited to one license for every 500 population in the City; but why the Ryan license was transferred to a different location after six months' use of the same at plaintiffs' premises does not appear, nor does it appear that any effort whatever was made by the defendant to retain said license for said premises or obtain another. There was no evidence as to the number of licenses in force in Chicago at that time, nor that anyone had ever made any application to the City for a license for said premises for the period beginning November 1, 1909. In other words, there is no proof whatever in the record that Ryan's license or some other could not have been obtained by reasonable effort, nor that a new license for a new tenant for said premises could not have been obtained in the same manner as it had been obtained and used for said premises during the six months prior to November 1, 1909.

Defendant's counsel make the claim that the defendant had the right to cancel the lease at any time upon giving thirty days' notice ''if for any reason that appeared to be sufficient to the lessee, a license could not be obtained.'' We do not so construe the language of the contract between the parties. It may be conceded, as counsel claims, that ''the lessee was not obliged to pay    *    *    *    an outrageous price to get an outstanding license transferred to some person who would hold it for its benefit, nor    *    *    *    comply with extraordinary conditions;'' but there is no evidence in the record to show that an outrageous price was demanded by anybody, nor that extraordinary conditions confronted the defendant at the time in question. So far as this record shows, defendant did not even try to obtain a license at any price or under any condition. The ruling of the trial court was therefore correct, and its judgment will be affirmed.

*Affirmed.*