**WESTERN UNION TELEGRAPH CO. v. HANSEN & ROWLAND CORPORATION.**

No. 11689.

Circuit Court of Appeals, Ninth Circuit.

Feb. 18, 1948.

Lane Summers, of Seattle, (F. T. Merritt and G. H. Bucey, both of Seattle, Wash., of counsel), for appellant.

Charles T. Peterson and Peterson & Duncan, all of Tacoma, Wash., for appellee.

Before GARRECHT, MATHEWS and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The appellee is seeking to recover from the appellant a statutory penalty for unlawful detainer of real property as defined by the laws of the State of Washington.

The facts have been stipulated and are briefly as follows:

The appellee was the owner of certain premises at Tacoma, Washington. Up to and including October 31, 1946, the appellant was the lessee of those premises, in lawful possession thereof under a valid lease as extended.

On July 24, 1946, the appellee sent to the appellant a notice declaring the former's intent to terminate the lease at the end of its term, October 31, 1946.

On September 25, 1946, the appellee sent to the appellant a notice "requiring" the latter "to quit and surrender" the premises "at the expiration of your tenancy on the first day of November, 1946".

On October 8, 1946, the appellant orally notified the appellee that it was unable to vacate the premises on October 31, 1946, whereupon the appellee orally advised the appellant that $750 per month was "a reasonable rental value of said premises".

Thereafter the appellant received a letter, dated October 8, 1946, from the appellee, notifying the appellant that it might continue "possession for a period not exceeding four months after the expiration of the present lease on the following terms": The appellant was to pay in advance rental at the rate of $1,500 per month, with the privilege of surrendering the premises at any time during the month after giving the owners ten days' written notice, in which event, upon the appellant's vacating, the unearned part of any month's rental would be refunded.

In that letter, the appellee reiterated that it regarded $750 per month as a "reasonable rental value" of the premises, and further stated that, because of the necessity of moving one of the appellee's departments to Seattle "pending the time they can get possession of said premises", there would be an additional cost of at least $750 per month, and "undoubtedly" more.

On October 30, 1946, the appellant tendered to the appellee as rental for the premises for the month of November, 1946, the sum of $750, accompanying such tender by a letter of the same date, which referred to that amount as "having been claimed and demanded by your letter of October 8, 1946, as the reasonable monthly rental value of the space above mentioned, which this company is compelled by circumstances to occupy until vacation is possible."

The appellant received a notice dated November 2, 1946, from the appellee, to the effect "that you are hereby required to pay the rental of $1500.00, which became due and payable on the 1st day of November, 1946, * * * within three days following the date of service of this notice, or in the alternative, to quit, vacate and surrender" possession. The appellant was unable to vacate the premises.

The appellee suffered no special damages, as alleged in its complaint, or otherwise, and is not entitled to recover therefor.

No rent under the lease as extended was due from the appellant to the appellee on October 31, 1946.

On November 30, 1946, the appellant tendered by letter to the appellee $1,500 as rental for the months of November and December, 1946, reiterating the statement that such amount had been claimed by the appellee "as the reasonable rental value", in the appellee's letter of October 8, 1946, supra.

On December 28, 1946, the appellant tendered by letter to the appellee $2250, as rental for November and December, 1946, and January, 1947, reiterating the statement referred to in the preceding paragraph.

On January 31, 1947, the appellant tendered by letter to the appellee $3,000, as rental for November and December, 1946, and January and February, 1947, with the same statement as before.

On February 11, 1947, the appellant filed its answer to the appellee's complaint, and at the same time deposited in the registry of the court below, "in perpetuation of tenders previously made, the sum of $3000.00."

On February 28, 1947, the appellant tendered by letter to the appellee $750 as rental for March, 1947, "and thereafter on the same date" the appellant "deposited said sum of $750 in the registry of the above entitled court in perpetuation of such tender". None of the tenders made by the appellant to the appellee were accepted.

At all times material to this case on and after November 1, 1946, the reasonable rental value of the premises was $750 per month.

On March 7, 1947, the appellant surrendered the premises to the appellee.

After removal from the Superior Court of the State of Washington for Pierce County and after joinder of issues in the court below, the cause was presented for adjudication upon the complaint, the answer, and the stipulation of facts without any testimony and without a jury.

In its conclusions of law, the lower court stated that the appellant wrongfully detained the premises from the appellee from November 1, 1946, to March 7, 1947, inclusive; that the reasonable rental value was $750 per month, or a total of $3,175; and that by reason of such wrongful detainer, the appellee was entitled to a judgment for double the amount of the rental during that period, or $6,350, with costs. Judgment was rendered accordingly, and from that judgment the present appeal was taken.

We agree with the appellant that the single problem to be determined here "is whether during its disputed occupancy beginning November 1st, 1946, and ending March 7, 1947, the [appellant] was a *traspasser* under the penalty of subsection (1) § 812 [Remington's Revised Statutes of Washington], or a *tenant by sufferance* under the protection of § 10621" of the same compilation. There was no other type of tenancy possible under the facts of this case; no *tertium quid*.

We will dispose of the second proposition first.

1. *The Appellant Was Not a Tenant by Sufferance*

Section 10621 of Rem.Rev.Stat. reads as follows:

"*Tenancy by sufferance.* Whenever any person obtains possession of premises without the *consent of the owner* or other person having the right to give said possession, he shall be deemed a tenant by sufferance merely, and shall be liable to pay reasonable rent for the actual time he occupied the premises, and shall forthwith on demand surrender his said possession to the owner or person who had the right of possession before said entry, and all his right to possession of said premises shall terminate immediately upon said demand." [Emphasis supplied.]

Since the record is clear that the appellant acquired possession by virtue of a valid lease, and therefore *with* the consent of the owner, the appellant seeks to avoid the force of the verb "obtains" by resorting to certain *secondary* meanings given to the word in Webster's New International Dictionary, 2d Ed., page 1682. Some of the meanings contended for by the appellant are applicable to the verb "obtain" only when used in an *intransitive* sense, such as "to be prevalent or general, as the custom *obtains*", whereas the verb is used transitively in § 10621, supra. The other definitions of the word in a transitive sense given by Webster's—in addition to the primary meaning—do indeed convey the idea of "to hold, to keep, or to possess," as claimed by the appellant; but every one of such definitions is qualified by Webster's with the designation "Obsolete", "a Latinism", "Archaic" or "Now Rare".

The *primary* meaning of the transitive verb "to obtain" as given by Webster's

Dictionary is as follows: "To get hold of by effort; to gain possession of; to procure; to acquire, in any way; as, to *obtain* one's ends, wealth, another's confidence."

Without indulging in a disquisition on the niceties of grammar and semantics, we need say merely that it is not to be supposed that the legislature of Washington intended to use so simple and familiar a word as "obtains" in an obsolete, rare, archaic, or exotic sense.

It is true that there is language in Davis v. Jones, 15 Wash.2d 572, 574, 131 P.2d 430, when read in the light of the facts of that case, which might indicate that the court intended to hold that tenancy by sufferance could come into being with the consent of the rightful owner.

However, that may be, the later case of Najewitz v. Seattle, 21 Wash.2d 656, 658, 152 P.2d 722, apparently overlooked by counsel, sets the matter at rest. There the amended complaint recited that the city of Seattle employed the plaintiff as watchman and caretaker of certain property, and "particularly employed plaintiff to move from said city into said house upon said tract of land." Nine years later, certain persons acting under the orders of the city engineer, ordered the plaintiff off of the property. In affirming the lower court's action in sustaining a demurrer to the complaint, the Supreme Court of the State used the following language:

"We think it is clear that the amended complaint, stripped of conclusions and argumentative allegations, merely sets up an agreement for the occupancy of real property. All declarations and conclusions to the contrary cannot change the legal relationship of the parties established by the ultimate facts alleged.

"The legal effect of the agreement pleaded created the relationship of landlord and tenant, not that of employer and employee. In its simple and ultimate aspect, it was an agreement whereby plaintiff was permitted to occupy the house on the property in consideration of his services in taking care of and keeping the property in repair.

"The tenancy created was for an indefinite term. It was not a tenancy from month to month however in contemplation of Rem.Rev.Stat., § 10619 [P.C. § 3554], because there was no 'monthly or other periodic rent reserved.' *Nor was it a tenancy by sufferance* under Rem.Rev.Stat., § 10621 [P.C. § 3556], *because, according to the allegations of the amended complaint, the occupancy was with the consent of the owner.*" [Emphasis supplied.]

*2. The Unlawful Detainer Statute Is Precisely Applicable*

As we have already seen, according to the appellant there is a "single problem" in this case; namely, whether during the disputed occupancy the appellant was a trespasser or a tenant by sufferance. Having determined that it was not a tenant by sufferance, under the strict rules of logic we might forthwith conclude that, under the theory of exhaustion, the appellant must necessarily be a trespasser. It is not difficult, however, to show *affirmatively* that under the Washington statute, the appellant came within the reach of the code section defining unlawful detainer, and was therefore a trespasser.

Rem.Rev.Stat. § 812 provides in part as follows:

"A tenant of real property for a term less than life is guilty of unlawful detainer either,—

"(1) When he holds over or continues in possession, in person or by subtenant, of the property or any part thereof after the expiration of the term for which it is let to him. In all cases where real property is leased for a specified term or period by express or implied contract, whether written or by parol, the tenancy shall be terminated without notice at the expiration of such specified term or period; * * *."

The Washington statute dealing with unlawful detainer is so plain that the Supreme Court of the State repeatedly has declared that its various provisions are "not susceptible of construction". In the leading case of Morris v. Healy Lumber Company, 33 Wash. 451, 457, 74 P. 662, 664, the court said: "Section 5527, 2 Ballinger's Ann.'Codes & St., provides, that a tenant of real property for a term less than life is guilty of unlawful detainer when he

262

holds over or continues in possession, in person or by subtenant, of the property, or any part thereof after the expiration of the term for which it is let to him; that in all cases where real property is leased for a specified term or period by express or implied contract, whether written or by parol, the tenancy shall be terminated without notice at the expiration of such specified term or period. It would seem that, if corporations are to be subjected to the provisions of the law as are individuals, *the statute is not susceptible of construction.*" [Emphasis supplied.]

Again, in Hinckley v. Casey, 45 Wash. 430, 431, 88 P. 753, after quoting the section of the unlawful detainer statute that deals with the measure of damages, infra, the late Judge Rudkin, later a member of this court, said: "Both parties concede that this statute is so plain that it is not susceptible of construction, and such was the language of this court in Bond v. Chapman, 34 Wash. 606, 76 P. 97."

The admitted facts of this case coincide exactly with those envisaged by § 812(1), supra:

(1) The appellant was a tenant of real property for a term of less than life;

(2) The tenancy was terminated on October 31, 1946. The appellant concedes that "Because of the plaintiff's notice dated July 24th the life of the lease according to its terms was definitely ended on October 31st."

(3) The appellant held over or continued in possession of the property after the expiration of the lease.

(4) On November 1, 1946, and at all material times thereafter, the appellant was "guilty of unlawful detainer".

3. *The Expiration of the Lease Terminates the Tenancy As Well.*

■ While recognizing the distinction between the lease-term and the tenancy itself, the law of Washington holds that the expiration of the former results in the termination of the latter.

Thus, it will be remembered that § 812 (1), supra, provides that a tenant of real property is guilty of unlawful detainer if he holds over after the expiration of the term. The same subsection adds, however, that the *tenancy* shall be terminated without notice at the expiration of the term.

As if attempting to put the matter beyond cavil, however, the state legislature has permitted § 10620, first enacted eighty years ago, to remain in the Revised Statutes, although it is almost a verbatim repetition of the final clause of § 812(1): "§ 10620. *Tenancy at specific time, when.* In all cases where premises are rented, for a specified time, by express or implied contract, the tenancy shall be deemed terminated at the end of such specified time."

As was said by Judge Rudkin in Hinckley v. Casey, supra, 45 Wash. at pages 431, 432, 88 P. at page 753: "The penalty is imposed for the refusal to surrender possession on the termination of the tenancy, whether it be terminated by the terms of the lease, for nonpayment of rent, or for any of the other causes specified in the statute."

In Lowman v. Russell, 133 Wash. 10, 11, 12, 233 P. 9, the court said, after quoting the text of § 10620, supra: "So that at the end of August, 1923, the end of the five-year term theretofore existing, not only the term ended but the tenancy itself, that is, the relation of landlord and tenant between the parties, ceased." See also O'Connell v. Arai, 63 Wash. 280, 115 P. 95, 96.

From the foregoing it follows that on November 1, 1946, the appellant ceased to be a tenant of the appellee and became a trespasser, "guilty of unlawful detainer".

4. *No New Tenancy Was Created by the Acts of the Parties.*

■ Indeed, the appellant admits that on November 1, 1947, its possession of the premises in question was "unlawful", and that its status was that of "trespasser".

The appellant contends, however, that this unlawful status lasted *but for a single day*—November 1—and that on the following day the appellee, by its notice requiring the appellant to pay a rental of $1500 within three days or surrender the premises, "changed the defendant's status

of trespasser as existing on November 1st into the defendant's status of tenant at sufferance as existing at all times after November 2nd."

As we pointed out at the outset of this discussion, the appellant could not have occupied the status of tenant by sufferance after the expiration of the lease, for the reason that it had originally "obtained" possession of the premises with the consent of the owner; i. e., under the terms of the lease.

The appellant does not contend, nor can it contend, that any other type of occupancy was created by the appellee's notice of November 2. There was either a tenancy by sufferance, or there was nothing. As we have said, there is no tertium quid.

5. *The Measure of Damages*

■ According to the stipulation, "at all times material on and after the first day of November, 1946, the reasonable rental value of said premises was the sum of $750 per month". The court below was correct in awarding judgment "in double the amount of the reasonable rental".

In Brownie v. McNelly, 134 Wash. 380, 384, 235 P. 807, 808, the court said: "There is no contradiction in the proof that *the reasonable rental value of the premises* at the time in question was $22.50 per month. We reach the conclusion that the judgment must be, and it is, reversed, with directions to the superior court to enter judgment for the appellants as prayed for in their complaint, including a money judgment in double the sum of $22.50 per month for the time the possession of the premises was detained from the appellants by the respondents, as provided by section 827, Rem.Comp. Stat. [P.C. § 7985]". [Emphasis supplied.][1]

The pertinent part of § 827, referred to in the foregoing excerpt, reads as follows: "If upon the trial the verdict of the jury, or if the case be tried without a jury the finding of the court, be in favor of the plaintiff and against the defendant, judgment shall be entered for the restitution of the premises, and if the proceeding be for unlawful detainer after neglect or failure to perform any condition or covenant of a lease or agreement under which the property is held, or after default in the payment of rent, the judgment shall also declare the forfeiture of the lease, agreement, or tenancy. The jury, or the court if the proceedings be tried without a jury, shall also assess the damages occasioned to the plaintiff by any forcible entry, or by any forcible or unlawful detainer, alleged in the complaint and proved on the trial, and if the alleged unlawful detainer be after default in the payment of rent, find the amount of any rent due, and the judgment shall be rendered against the defendant guilty of the forcible entry, forcible detainer, or unlawful detainer *for twice the amount of damages thus assessed* and of the rent, if any, found due. * * *" [Emphasis supplied.]

6. *Unlawful Detainer Statutes Are Strictly Construed Against the Trespasser*

■ The policy of the law, in Washington and elsewhere, is to construe statutes dealing with unlawful detainer strictly against the "holding-over" tenant.

*(a) Hardship to the Holding-Over Tenant Is No Defense*

An example of strict construction, and a possible reason for it, are to be found in Ullman v. Herzberg, 91 Ala. 458, 8 So. 408, 409: "The English statutes (4 and 11 Geo. II) fixed the penalty at double the rent, 'so long as the tenant continued to hold over.' Under this language the penalty or forfeiture ceased whenever the possession was restored to the landlord, and so the courts determined. Our statute is different, and we must suppose the difference is intentional. It is not 'so long as the tenant continues to hold over.' It is not so long as the landlord is kept out of possession. It is not at the rate of double the agreed rent. Its precise language is that the tenant so holding over 'is liable for double the amount of the annual rent agreed to be paid under such contract.' It

---

[1] See also Owens v. Layton, 133 Wash. 346, 347, 348, 233 P. 645, which held that "the appellants in holding the premises were trespassers and liable for general damages not determinable by the rate theretofore paid as rent, but by the market rental value of the premises during the time of trespass."

would seem that no room is left for interpretation, and we feel forced to interpret the statute as the trial court interpreted it. *It may be contended that our interpretation works a hardship, and doubtless in many cases it does. Possibly the legislature intended to deter tenants from holding over, the result of which, sometimes, is to pass the renting season by; and leave the landlord without a tenant.* The clause of the statute, however, which secures to the landlord the right to recover 'such other special damages as may be thereby sustained' would seem to be framed with special reference to such contingency. *But we must deal with the statute as it is"* [Emphasis supplied.] See also Jones on Landlord and Tenant, § 564, page 637.

*(b) Nor Is Tender a Defense*

■ The appellant argues that it "is not now liable for penalty [under § 827] because of its successive, cumulative tenders timely made and also timely perpetuated by deposits in court."

On at least two occasions, the Supreme Court of Washington in dramatic language has disposed of such a contention. In Armstrong v. Burkett, 104 Wash. 476, 479, 480, 177 P. 333, 334, 180 P. 873, the court said:

"Counsel bitterly complains that having tendered and paid into court the rent from August 15 up to the time of the trial, being for the intervening time, the court should not visit the penalty of the statute upon his client. Our heart is with him and with his client, but the statute, Rem.Code, § 827, must guide our hand. It leaves no legitimate ground for the exercise of our sympathy. The trial judge had no discretion, nor have we. [Cases cited.]

"It is no answer to say that plaintiffs might have withdrawn the money as it was paid in. A suit pending, it is likely that an acceptance of the amount tendered would have satisfied counsel's theory, a hazard plaintiffs were not called upon to take. It was their privilege to fix the legal rights of the parties as of the day of forfeiture." See also Davis v. Jones, supra, 15 Wash.2d 572 at page 579, 131 P.2d 430.

The judgment is affirmed.