ELIZABETH ANN McCARLEY v. LESLIE HARVEY McCARLEY

No. 90

(Filed 29 January 1976)

1. **Rules of Civil Procedure § 41— affirmative relief sought by defendant — dismissal by plaintiff improper**

    Since plaintiff's complaint alleged facts entitling either or both of the parties to the marriage to an absolute divorce, defendant's answer admitting these allegations together with his prayer "that the bonds of matrimony heretofore existing between the plaintiff and defendant be dissolved, and that the parties hereto be granted a divorce from each other" was, in effect, a counterclaim seeking affirmative relief and arising out of the same transactions alleged in the complaint; therefore, plaintiff could not, without defendant's consent, voluntarily dismiss her claim for relief. G.S. 1A-1, Rule 41(a)(1).

2. **Divorce and Alimony § 16— alimony and alimony pendente lite — application not required in pleadings — application as motion in the cause**

    There is nothing in G.S. 50-16.8 which indicates that an application for either alimony or alimony *pendente lite* must be contained in the pleadings or an amendment thereto in an action for absolute divorce; rather, the term "application" as used in this statute means a motion in the cause, the procedure for which is governed by the N. C. Rules of Civil Procedure.

3. **Divorce and Alimony § 16— application for alimony — date for hearing unspecified — motion proper**

    Though plaintiff's application for alimony did not specify a date for hearing, plaintiff properly proceeded to apply for alimony under

G.S. 50-16.8 where the motion was served by depositing it in the mail on 6 December 1973, properly addressed to defendant's attorney, at least five days before the already scheduled hearing on 13 December.

**4. Divorce and Alimony § 20— absolute divorce — effect on right to alimony — dependent spouse initiating and obtaining divorce**

An order of permanent alimony, if it had been made upon plaintiff's application for alimony, would have survived an absolute divorce decree notwithstanding the provisions of G.S. 50-11, since the Legislature apparently intended by the enactment of G.S. 50-11 to bar a decree of alimony for the dependent spouse if this spouse both *initiated* an action for *and obtained* a divorce on the ground of the statutory separation period, but in this case plaintiff who was the dependent spouse initiated the action but subsequently disclaimed any desire for the divorce and attempted to take a voluntary dismissal of her action, while defendant pursued the action to its completion and obtained the divorce decree.

**5. Divorce and Alimony § 20— divorce affecting alimony — meaning of divorce**

In the context of G.S. 50-11 a "divorce obtained by the dependent spouse" means a divorce which is pursued to completion by that spouse.

Justice HUSKINS dissenting.

Chief Justice SHARP and Justice BRANCH join in the dissenting opinion.

ON *writ of certiorari* to the North Carolina Court of Appeals to review its decision reported at 24 N.C. App. 373, 210 S.E. 2d 531 (1975) in which it affirmed the judgment of *District Court Judge Robinson* granting an absolute divorce to the parties and his refusal to consider plaintiff's application for alimony.

This case was docketed and argued as No. 116 at the Spring Term 1975.

On July 25, 1973, plaintiff filed action for absolute divorce upon the ground of one year's separation. Defendant answered admitting all allegations of the complaint and prayed also for an absolute divorce. Neither plaintiff nor defendant requested a jury trial.

On November 18, 1973, plaintiff filed a "Notice of (Voluntary) Dismissal." On December 7, 1973, plaintiff filed "Application for Alimony Pursuant to N.C.G.S. Sec. 50-16.8(b) (1)" in which she alleged that she did not seek nor intend to obtain an absolute divorce by virtue of her complaint, that she was the dependent spouse, that the defendant had through excessive

use of alcohol rendered her condition intolerable and life burdensome, and alleged generally other grounds for alimony. This application was served upon the defendant by mailing it to his attorney on December 6, 1973, and was filed on December 7, 1973.

The case was heard in the District Court Division on December 13, 1973, before Judge Robinson. On that day the action was at issue and properly called for trial at a regular District Court Session for the trial of Civil, Non-Jury Alimony, Divorces, motions and pre-trials. Judge Robinson, on defendant's motion, set aside and declared void the plaintiff's Notice of Dismissal. Plaintiff then moved to stay the divorce proceeding on the grounds that another separate and earlier action for alimony *pendente lite,* permanent alimony, and custody of the children filed by her was then pending and that plaintiff had filed an application for alimony in the case at bar which she wanted determined. Plaintiff said she was by order in the earlier action receiving alimony *pendente lite,* but the case had not been heard on its merits. Judge Robinson denied her motion to stay the proceeding. During the course of the hearing plaintiff invited the court to consider her application for alimony. The court refused to do so. The court heard only the testimony of the defendant which tended to establish the marriage and the separation and entered judgment decreeing an absolute divorce.

*Lila Bellar and Marshall H. Karro for plaintiff appellant.*

*Hamel, Cannon & Hamel, P.A. by Thomas R. Cannon, for defendant appellee.*

EXUM, Justice.

I

[1]  The Court of Appeals held it proper for the trial court to set aside plaintiff's attempted voluntary dismissal under General Statute 1A-1, Rule 41(a)(1) [hereinafter Rule ____]. This much of its decision is correct.

This statement of our practice as it existed before the adoption of present Rule 41 occurs in 2 McIntosh, North Carolina Practice and Procedure § 1645 (2d ed. T. Wilson and J. Wilson 1956):

> While the plaintiff may generally elect to enter a nonsuit, "to pay the costs and walk out of court," in any case

McCarley v. McCarley

in which only his cause of action is to be determined, although it might be an advantage to the defendant to have the action proceed and have the controversy finally settled, he is not allowed to do so when the defendant has set up some ground for affirmative relief or some right or advantage of the defendant has supervened, which he has the right to have settled and concluded in the action. If the defendant sets up a counterclaim arising out of the same transaction alleged in the plaintiff's complaint, the plaintiff cannot take a nonsuit without the consent of the defendant; but if it is an independent counterclaim, the plaintiff may elect to be nonsuited and allow the defendant to proceed with his claim.

This rule of procedure has been recognized in domestic cases, *Griffith v. Griffith,* 265 N.C. 521, 144 S.E. 2d 589 (1965); *Scott v. Scott,* 259 N.C. 642, 131 S.E. 2d 478 (1963), and applied in *Cox v. Cox,* 246 N.C. 528, 98 S.E. 2d 879 (1957). It appears to have been generally recognized in divorce cases in other jurisdictions which have faced the issue. Annot., "Divorce-Voluntary Dismissal," 16 A.L.R. 3d 291 §§ 8, 12 (1967). We agree with the Court of Appeals' holding that Rule 41(a)(1) "had the effect of changing our former practice only to the extent that the plaintiff desiring to take a voluntary nonsuit [now a voluntary dismissal] must now act before he rests his case, whereas under our former practice he could do so at any time before the verdict. In other respects, however, our former practice was not expressly changed by Rule 41(a)(1) as it finally became effective." 24 N.C. App. at 376, 210 S.E. 2d at 533. *See* W. A. Shuford, North Carolina Civil Practice and Procedure § 41-4 (1975).

In this case plaintiff filed a verified complaint alleging residency of both parties, marriage, one year's separation, names, ages and custody of the children born of the marriage, and prayed for absolute divorce on the ground of one year's separation. Defendant filed a verified answer as follows:

Now comes the defendant in the above entitled action, and in answer to plaintiff's complaint, alleges and says:

1. That the allegations as set forth in paragraph 1 of plaintiff's complaint are admitted.

2. That the allegations set forth in paragraph 2 of plaintiff's complaint are admitted.

McCarley v. McCarley

3. That the allegations as set forth in paragraph 3 of plaintiff's complaint are admitted.

4. That the allegations as set forth in paragraph 4 of plaintiff's complaint are admitted.

5. That the allegations as set forth in paragraph 5 of plaintiff's complaint are admitted.

WHEREFORE, the defendant having fully answered plaintiff's complaint, joins in the prayer for relief, and prays the Court that the bonds of matrimony heretofore existing by and between the plaintiff and defendant be dissolved, and that the parties hereto be granted a divorce from each other; further, that the defendant waives right to file any further answer in this cause.

Since the complaint alleged facts entitling either or both of the parties to the marriage to an absolute divorce, we hold that defendant's answer admitting these allegations together with his prayer "that the bonds of matrimony heretofore existing between the plaintiff and defendant be dissolved, and that the parties hereto be granted a divorce from each other" was, in effect, a counterclaim seeking affirmative relief and arising out of the same transactions alleged in the complaint. Plaintiff, therefore, could not, without defendant's consent, voluntarily dismiss her claim for relief.

The rationale for this rule of practice is simply that it would be manifestly unjust to allow a plaintiff, who comes into court upon solemn allegations which, if true, entitle defendant to some affirmative relief against the plaintiff, to withdraw, *ex parte,* the allegations after defendant has demanded the relief to which they entitle him. Upon demand for such relief defendant's right to have his claim adjudicated in the case "has supervened," 2 McIntosh, *supra,* and plaintiff thereby loses the right to withdraw allegations upon which defendant's claim is based without defendant's consent. Nowhere, it seems to us, does this rationale apply with more force than where plaintiff seeks divorce upon the ground of one year's separation and defendant in his answer likewise prays for a divorce upon the same ground.

By such a prayer defendant clearly seeks affirmative relief, which has been defined as "that for which the defendant might maintain an action entirely independent of plaintiff's claim, and

McCarley v. McCarley

which he might proceed to establish and recover even if plaintiff abandoned his cause of action . . . . " *Rhein v. Rhein,* 244 Minn. 260, 262, 69 N.W. 2d 657, 659 (1955).

Defendant here, furthermore, if he intended to seek a divorce at all on the ground of a year's separation, was bound to seek it by way of counterclaim in this action. Rule 13 (a) requires a pleading to "state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . . " That defendant's pleading is labelled an "answer" does not preclude its being treated also as a counterclaim. Rule 8 (c) states that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Rule 7 (a), furthermore, provides that a reply must be filed "to a counterclaim denominated as such" implying there will be counterclaims not so denominated. In *Rhein v. Rhein, supra,* it was said, "[f]ailure to label the affirmative allegations as a counterclaim is, of course, not fatal if they sufficiently support a claim for relief."

Neither does defendant's failure to allege affirmatively facts within his pleading preclude the pleading from being treated as a counterclaim. The answer begins, "the defendant . . . alleges and says:" It then admits the allegations of the complaint. Rule 10 (c) provides, "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading . . . . " Defendant could have and we hold did, in effect, adopt by reference the allegations in the complaint. To require defendant who solemnly admits the truth of the allegations of the complaint upon which he then bases his prayer for relief to repeat them in his own pleading as a prerequisite to treating his pleading as a counterclaim seeking affirmative relief would surely be a triumph of form over substance.

While defendant's answer is not a model to be followed in asserting a counterclaim for affirmative relief, when construed so "as to do substantial justice," Rule 8 (f), it suffices for that purpose. "[P]rovisions relating to procedure . . . for divorce are liberally construed to insure the consideration of divorce cases on their merits." 3 Sutherland, Statutory Construction § 68.06 (Sands, 1974).

The trial court, therefore, properly allowed defendant's motion to set aside plaintiff's notice of voluntary dismissal. There was no error in the ultimate entry of a judgment of absolute divorce based on defendant's pleading and evidence. The decision of the Court of Appeals is affirmed on this aspect of the case.

## II

We hold, however, that the Court of Appeals erred in affirming the district court's refusal to consider plaintiff's application for alimony. The Court of Appeals held that plaintiff's application for alimony should have been made, if at all, in the complaint or in an amendment thereto, saying, 24 N.C. App. at 377, 210 S.E. 2d at 533:

> [b]y filing the "Application" for an award of alimony in this proceeding, plaintiff was in effect attempting to amend her complaint so as to assert a completely different cause of action. This she could do only by leave of court or by written consent of the adverse party, G.S. 1A-1, Rule 15 neither of which she sought or obtained.

This ruling was erroneous.

[2] Plaintiff was obviously proceeding under General Statute 50-16.8. (Unless otherwise indicated references to Chapter 50 of the General Statutes will be to the Chapter as it appears in the 1974 Cum. Supp.) This statute provides, in pertinent part:

(b) Payment of alimony may be ordered:

    (1) Upon application of the dependent spouse in an action by such spouse for divorce, either absolute or from bed and board. . . .

* * * *

(d) Payment of alimony pendente lite may be ordered:

    (1) Upon application of the dependent spouse in an an action by such spouse for absolute divorce, divorce from bed and board, annulment, or for alimony without divorce. . . .

Nothing in these provisions indicates that an application for either alimony or alimony *pendente lite* must be contained in the pleadings or an amendment thereto in an action for absolute divorce. We construe the term "application" as used in this

McCarley v. McCarley

statute to mean a motion in the cause, the procedure for which is governed by the N. C. Rules of Civil Procedure. General Statute 50-16.8(a) provides, "[t]he procedure in actions for alimony and actions for alimony pendente lite shall be as in other civil actions except as provided in this section." Rule 7(b)(1) provides that an *"application* to the court for an order shall be by motion. . . ." (Emphasis supplied.) We held in *Zimmerman v. Zimmerman*, 113 N.C. 432, 18 S.E. 334 (1893), a case dealing with what is now referred to in Chapter 50 of our General Statutes as "alimony pendente lite," that "[a]pplication for alimony can be made by a motion in the cause." General Statute 50-16.8(b) and (d) provides for the payment of both alimony and alimony *pendente lite* "upon application." It seems logical to hold that the Legislature intended the word "application" as used in both of these subsections and in Rule 7(b)(1) to have reference to the same kind of procedure.

[3] Plaintiff's application for alimony here obviously complied with Rule 7(b). The application did not, however, specify a date for hearing. See Rule 6(d). This Court, considering this same kind of defect in *Zimmerman v. Zimmerman, supra* at 434-435, 18 S.E. at 334-335, said:

> If, upon such notice, the hearing had been at any other time and place than the regular term of court at which the action was pending, there would be some ground of objection to the order. It would, at least, have been irregular and should have been set aside, on motion; but when the order was made in the cause and at the term of court, and especially at the term at which the cause stood regularly for trial, the defendant is fixed with notice thereof. (Citations omitted.) Notice is required to be given only when the application is heard out of term time.

The motion was served, by depositing it in the mail on December 6, 1973, properly addressed to defendant's attorney, at least five days before the already scheduled hearing on December 13. Rules 5(b), 6(d), and 6(a). The plaintiff, therefore, properly proceeded to apply for alimony under General Statute 50-16.8.

[4] The remaining question is whether an order of permanent alimony, if it had been made upon her application, would have survived the divorce decree notwithstanding the provisions of General Statute 50-11. We conclude that it would have.

General Statute 50-11(a) states that "[a]fter a judgment of divorce from the bonds of matrimony, all rights arising out of the marriage shall cease and determine except as hereinafter set out. . . ." One of the rights arising out of the marriage, which ceases and determines is the right to support. This much of the statute is declarative of the common law. R. E. Lee, North Carolina Family Law § 135 (3d Ed. 1963). General Statute 50-11(c), however, provides in pertinent part:

> . . . *[E]xcept in case of divorce obtained by the dependent spouse in an action initiated by such spouse on the ground of separation for the statutory period* a decree of absolute divorce shall not impair or destroy the right of a spouse to receive alimony and other rights provided for such spouse under any judgment or decree of a court rendered before *or at the time of* the rendering of the judgment for absolute divorce. (Emphases supplied.)

The words "or at the time of" in the statute were added by the amendments, N. C. Sess. Laws 1967, c. 1152, § 3, to former General Statute 50-11 (1966) to complement the provisions of General Statute 50-16.8(b) which, as we have noted, allow procedurally the questions of divorce and alimony to be determined in a single action. If alimony is found to be appropriate after a hearing on remand, the ensuing judgment or decree awarding it will relate back to the time when the application for alimony should have been considered, which was "before or at the time of the rendering of the judgment for absolute divorce." *Darden v. Darden,* 20 N.C. App. 433, 201 S.E. 2d 538 (1974).

Defendant contends, though, that an award of alimony would be barred by the exception in General Statute 50-11(c) which subsection is itself an exception to the general prohibition of the continuance of alimony after a judgment of divorce contained in General Statute 50-11(a). The Legislature apparently intended by the enactment of General Statute 50-11(c) to bar a decree of alimony for the dependent spouse if this spouse both *initiated* an action for *and obtained* a divorce on the ground of the statutory separation period. It is clear here that this divorce was rendered in an action initiated by the dependent spouse. It is less clear whether it was obtained by her.

We hold under the circumstances of this case that she did not obtain this divorce within the meaning of General Statute

McCarley v. McCarley

50-11 (c). When the divorce action came on for hearing before Judge Robinson the plaintiff had already disclaimed any desire for the divorce. She had attempted to take a voluntary dismissal of her action and stated unequivocally that she did not seek nor intend to obtain an absolute divorce by virtue of her complaint. The only evidence establishing the grounds for divorce came from the defendant who testified in accordance with his counterclaim.

The question, in essence, is whether the Legislature intended to use the transitive verb "obtained" in its active or passive sense. This Court has said, in another context, that "obtained" meant "secured" or "acquired." *Beattie v. Central Carolina Railroad,* 108 N.C. 425, 432, 12 S.E. 913, 915 (1891). While this definition does little to further the precise inquiry here it seems that "obtain" is generally and most often used in the active sense. We believe this is the sense in which the Legislature intended to use it in the statute. Webster's Third New International Dictionary (1971) defines "obtain" first as "to gain or attain possession or disposal of usually by some planned action or method" and "to bring about or call into being." The Oxford English Dictionary (corrected reissue 1961) gives seven definitions for "obtain." The first five seem to require some effort and purpose on the part of the one who obtains, the sixth does not, and the seventh is used in another unrelated sense. The first definition is most instructive: "To come into the possession or enjoyment of (something) by one's own effort, or by request; to procure or gain, as the result of purpose and effort; hence, generally, to acquire, get." This definition was approved in the case of *Re Woods, Woods v. Woods,* [1941] St. R. Qd. 129, 137 (Australia). In *Western Union Telegraph Co. v. Hansen and Rowland,* 166 F. 2d 258, 260-261 (9th Cir. 1948) it was said of "obtain":

> The . . . definitions of the word in a transitive sense given by Webster's—in addition to the primary meaning—do indeed convey the idea of "to hold, to keep, or to possess" . . . but every one of such definitions is qualified by Webster's with the designation "Obsolete," "a Latinism," "Archaic" or "Now Rare."
>
> The *primary* meaning of the transitive verb "to obtain" as given by Webster's Dictionary is as follows: "To get hold of by effort; to gain possession of; to procure; to

McCarley v. McCarley

acquire, in any way; as, to *obtain* one's ends, wealth, another's confidence."

Without indulging in a disquisition on the niceties of grammar and semantics, we need say merely that it is not to be supposed that the legislature of Washington intended to use so simple and familiar a word as "obtains" in an obsolete, rare, archaic, or exotic sense.

The strict primary meaning of "obtain" then, is to acquire by one's own efforts. *Contra, Omensky v. Cook,* 172 Ill. App. 507 (Chicago—First District 1912), where it is said that "whatever we thus *seek* and *get* [other than by chance], we *obtain,* whether by our own exertions or those of others."

[5]   We hold, consequently, that in the context of this statute a "divorce obtained by the dependent spouse" means a divorce which is pursued to completion by that spouse. To hold otherwise would mean, at times, that the dependent spouse would be unfortunately and irrevocably wedded to an earlier decision to seek divorce made perhaps under the influence of extreme emotion and without sufficient reflection upon the consequences when the spouse later might like to say, "I will forget my complaint, I will leave off my heaviness and comfort myself." Job 9:27. In this case, for example, when the trial court denied plaintiff's motion to stay the proceedings, her application for alimony was her only method of preserving her right, already asserted in an earlier and different action, to .claim it. Under the decision of the Court of Appeals the obtaining here by defendant husband of an absolute divorce would preclude the entry of a judgment for permanent alimony in this earlier pending action. *Mitchell v. Mitchell,* 270 N.C. 253, 258, 154 S.E. 2d 71, 75 (1967). The husband, furthermore, in that prior pending action would be entitled on motion, to terminate the payment of alimony *pendente lite* already ordered. *Smith v. Smith,* 12 N.C. App. 378, 183 S.E. 2d 283 (1971).

Plaintiff here then was not precluded by General Statute 50-11(c) from having her application for alimony considered. Any award of alimony based thereon will survive the divorce decree which, in this case, was obtained, not by her, but by the defendant. The case will, therefore, be remanded to the Court of Appeals for remand by that Court to the District Court Division in Mecklenburg County for further proceedings on plaintiff's application for alimony in accordance with this opinion.

McCarley v. McCarley

Affirmed in part and in part reversed and remanded.

Justice HUSKINS dissenting.

I respectfully dissent from Part I of the majority opinion which upholds the decision of the Court of Appeals that the trial court properly set aside plaintiff's notice of dismissal.

On 24 July 1973 plaintiff wife filed a complaint for absolute divorce alleging residence, marriage of the parties on 14 November 1958, their separation on 13 July 1972, and that they had lived separate and apart since that date. The complaint names the four children born of the marriage. She did not allege that she was a dependent spouse and did not seek alimony in her complaint.

On 9 August 1973 defendant filed answer which reads in pertinent part as follows:

"Now comes the defendant in the above entitled action, and in answer to plaintiff's complaint, alleges and says:

1. That the allegations as set forth in paragraph 1 of plaintiff's complaint are admitted.

2. That the allegations as set forth in paragraph 2 of plaintiff's complaint are admitted.

3. That the allegations as set forth in paragraph 3 of plaintiff's complaint are admitted.

4. That the allegations as set forth in paragraph 4 of plaintiff's complaint are admitted.

5. That the allegations as set forth in paragraph 5 of plaintiff's complaint are admitted.

WHEREFORE, the defendant having fully answered plaintiff's complaint, joins in the prayer for relief, and prays the Court that the bonds of matrimony heretofore existing by and between the plaintiff and defendant be dissolved, and that the parties hereto be granted a divorce from each other; further, that the defendant waives right to file any further answer in this cause."

On 18 November 1973 plaintiff filed a written "Notice of Dismissal" giving notice that the action "is hereby dismissed without prejudice to any rights of the plaintiff against the de-

fendant" growing out of the marriage. Plaintiff stipulated that the costs should be taxed against her.

The case was apparently calendared for trial, notwithstanding plaintiff's notice of dismissal, and on 7 December 1973 plaintiff filed an application for alimony under G.S. 50-16.2(9). She recited in this application that defendant had filed an answer joining in the prayer for an absolute divorce; that she had entered notice of dismissal and thus did not seek nor intend to obtain an absolute divorce herself; that four children were born of the marriage; that she is a dependent spouse; that defendant is an excessive user of alcohol so as to render her condition intolerable and life burdensome by (a) constantly accusing her of infidelities, (b) berating and criticizing her, (c) cruel and barbarous treatment of her and the children; that she has been a dutiful wife and defendant's conduct has been without any provocation whatsoever; that she has insufficient means whereon to subsist and thus prays for an order requiring defendant to pay subsistence and permanent alimony following the trial, plus counsel fees.

On 13 December 1973 Judge Robinson entered an order declaring plaintiff's notice of dismissal void. The judge then heard the case, a demand for jury trial not having been made by either party, and defendant testified to the residence, marriage, and period of separation sufficient to support a judgment of absolute divorce. The judge refused to consider plaintiff's application for permanent alimony and signed a judgment dissolving the marriage in these words:

> "IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the bonds of matrimony heretofore existing between the plaintiff and the defendant be, and they hereby are dissolved, and the plaintiff and the defendant are granted an absolute divorce from each other."

The Court of Appeals affirmed, and we granted certiorari to review that decision.

It is my view that the trial court erred in allowing defendant's motion to set aside and declare void the plaintiff's notice of dismissal. As I see it, the defendant did not file a "cross-action" or "counterclaim" or by his answer set up any ground for affirmative relief. He simply admitted the allegations in the complaint and prayed that "the bonds of matrimony heretofore existing by and between the plaintiff and defendant be dis-

solved and that the parties hereto be granted a divorce from each other." Such pleading may not be equated with a counter-claim or cross-action in which he himself seeks affirmative re-lief, *i.e.,* an absolute divorce.

Rule 41 (a) (1), Rules of Civil Procedure, provides, in perti-nent part, that "an action or any claim therein may be dis-missed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before the plaintiff rests his case." That is exactly what plaintiff did in this case.

Under our former practice, a plaintiff in a civil action against whom no counterclaim was asserted and no affirmative relief demanded had an absolute right to take a voluntary non-suit and get out of court at any time *before verdict. Insurance Co. v. Walton,* 256 N.C. 345, 123 S.E. 2d 780 (1962) ; *Mitchell v. Jones,* 272 N.C. 499, 158 S.E. 2d 706 (1968). This rule ap-plied to actions for divorce. *Cox v. Cox,* 246 N.C. 528, 98 S.E. 2d 879 (1957). Under Rule 41 (a) (1), plaintiff has the same absolute right to get out of court at any time "before the plain-tiff rests his case." *See Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297 (1971) ; *Collins v. Collins,* 18 N.C. App. 45, 196 S.E. 2d 282 (1973) ; 1 Lee, N. C. Family Law, § 53 at 41 (Supp. 1974).

In my judgment defendant's answer is simply a general admission of the allegations contained in the complaint and nothing more. The prayer itself contains nothing which may properly be classified as a plea for affirmative relief. Defend-ant doesn't pray that he be granted an absolute divorce. He merely "joins in the prayer for relief, and prays the Court that the bonds of matrimony heretofore existing by and between the plaintiff and defendant be dissolved, and that the parties hereto be granted a divorce from each other. . . ." To say that defendant's answer contains a counterclaim for affirmative re-lief which is legally sufficient to support the judgment for ab-solute divorce entered in the trial court requires more reaching and stretching than I am willing to do and violates all the rules of pleading with which I am familiar. Consequently, my vote is to reverse the Court of Appeals and remand this case to Meck-lenburg District Court for entry of an appropriate order de-claring void the judgment signed by Judge Robinson dated and filed 13 December 1973. In my opinion no case was then pend-ing in court because plaintiff had legally and effectively filed her written notice of dismissal as authorized by Rule 41 (a) (1),

Rules of Civil Procedure. I regard the judgment for divorce as absolutely void.

Of course, if defendant's answer is construed to assert a counterclaim or cross-action wherein affirmative relief is demanded, then I fully concur with the majority view expressed in Part II of the opinion that under G.S. 50-16.8(b) and G.S. 50-11(c) plaintiff's application for permanent alimony in defendant's "cross-action" for an absolute divorce was timely and appropriately made before defendant "obtained" his divorce. It is quite apparent that plaintiff did not "obtain" one despite the gratuitous action of the trial court. If the trial court intended to dissolve the marriage on the theory that defendant in his answer affirmatively sought such relief, then her application for alimony should have been passed upon "at the time of the rendering of the judgment for absolute divorce." G.S. 50-11(c).

Chief Justice SHARP and Justice BRANCH join in this dissent.